Vincent Oliver appearing on behalf of Appellant Leon Miles. May it please the Court. Your Honor, the Court has issued an order in this case asking counsel to address a specific issue, and that is whether the case of Haney v. Adams precludes the relief requested in this case. And I submit that it does not. The two cases are distinguishable. In the Haney case, there was not only was there not a contemporary objection, but there was no ruling on the merits by the Court. There was nothing other than the application of the contemporary objection rule, which the Court found was reasonable and not inappropriate. The purpose of Haney is to ensure that an appellate court, when reviewing a claim of this type, has a full and complete record. And in the absence of an objection, the record will not demonstrate the prosecution's description of its non-protextual reasons for exercising periphery challenges, and there's simply no way to look at it. Isn't that the case here? I would agree with the Court. The Court is accurate, except it's still distinguishable, because in our case, the prosecution was able to address the issue on the merits. There's a co-defendant objection. Correct. The only thing the trial lawyer didn't do was say, I join. Two words. Had he done that, we wouldn't be talking here today. But there is an adequate record in the Miles case that they can make this, from which a determination could be made. There clearly is. Let me ask you, assuming that that's the case, assuming that you get past Haney, the court of appeal in this case said, essentially, there was procedural default. But even if there had been, and you can't show ineffective assistance or counsel, because on this record, we can't conclude that there were, that this was a pretext. And then it reviewed in some detail, a little bit of detail, the information about the two veneer people who are at stake in this case. One thing that concerns me about this case is I can see reasonable strategic reasons why Miles's counsel might have said, maybe my co-defendant is objecting to these peremptory strikes, but I'm perfectly happy to see these people off the jury. One of them, I think, had relatives who worked for the county. The other one had some history, negative history, with law enforcement. Can we look at this record and conclude that you would have prevailed on the Batson claims, which is, I think, your burden? Well, I think so. There really has not been a determination of that, you know, whether it would be granted or not. I guess I'm asking a slightly different question. Because you're here on habeas, isn't it your burden to show, if there was procedural default, as I think we have to find since the California courts treated it as such, cause and prejudice, which is to say that you likely would have prevailed had counsel made these objections? Well, I believe we would have, Your Honor. Tell me why. Well, I think I'm a trial lawyer. I'm in these courts every day. And I know there is a substantial difference in points of view from the different races that appear in these juries. And there is a difference in the perception, in my view, by African Americans of a case than there is of other races. No, no, I understand that. But presumably, if the trial judge had done what trial judges normally do and had said, okay, I'm not sure you've met your step one Batson burden, but let's move on to step two. Mr. Prosecutor, why did you strike these people? My experience is the prosecutor always has a reason. And my experience is the trial judge usually says, okay, I don't think that was protectual. So don't you have to demonstrate to us in this case that if the trial judge had walked through that entire analysis, he or she would have concluded that this was a pretextual reason for exercising peremptories? Well, the Court's correct. But I don't know really if I'm really prepared to do that. I was more taken aback by the fact that Mr. Miles did not really have an opportunity to do that. But this habeas doesn't claim inadequate representation of counsel. This habeas is a claim that despite the procedural default, the district court should look at the Batson claim, right? Well, actually, I believe our contention is that it was ineffective assistance of counsel. I thought your contention was that was the cause and prejudice that got you past the procedural bar of being able to raise the Batson claim. Well, that's correct. But what I'm saying is that whether or not had the lawyer made the appropriate claim in addition to saying, I join, I'm sure that he would have added to the record his reason. But help me out here. Tell me how, take me from that point. I've got a good lawyer. The lawyer says, Your Honor, I join this and I want to say something more. Well, get me to the point where the judge in the trial court says, You're right, Mr. Miles's lawyer, you win. How do you get there? Well, I don't know if I could really address that issue at this time. The prejudice, I believe, is the fact that Mr. Miles was precluded from making a direct inquiry into why the court was making the ruling that it was making and explaining why the prosecutor's arguments were inappropriate. Do we know, from this record, the racial composition of the denier? I'm not sure. I don't believe it. Do we know the racial composition of the jury that sat? No, I don't know that, Your Honor. I don't know that, Your Honor. Absent those two pieces of information, how can we get to an answer of Judge Hurwitz's question? How can you show that the trial court would have said, Miles's counsel, you're right? I'm not prepared to address that, Your Honor. Okay. Do you want to reserve some time for rebuttal? No. Okay. Thank you. Good morning. May it please the court. Deputy Attorney General Michael Johnson, on behalf of the warden. Excuse me. Could you speak up a little bit? Sure. You've got a frog in your throat. My kids all have colds right now, so I apologize. You can't hear your kids describing the job that you do. There's people in the back of the classroom that need to hear. I'll do that, Your Honor. We wholeheartedly agree that the record is insufficient in this case to support the statistical disparity claim, and that's really the fundamental problem in this case. Well, let me ask you about that record. The judge seemed to say that after 64 of the about 100 jurors in the veneer were questioned, he thought 14 were African-American, which is, I think, 22%. It says 29% in the briefs, but I had the benefit of a calculator. And the prosecution used seven of their peremptory challenges on African-Americans, well over 50% of their challenge, or near 50% of their challenges. Doesn't that get us past Batson step one? Isn't that enough to meet the rather low threshold needed to move on to the next inquiry? Mr. Prosecutor, why did you do this? I don't think so, for a couple of reasons, and I apologize if my math was off. I was not a math major either, so if we're both in the 20s, we're in agreement. Yeah, I think my reading of the record was that at one point, I think it was at the time of the second Batson motion, the court commented, there were 14 of 64 that had been African-Americans that had come up for voir dire, which I think is 29%, at least that's the number I had. Okay, so let's assume it's 29. Yeah, and at that point, the prosecutor had used eight of 18, which is 44%. So that's something. Isn't that enough to get us past step one? Isn't that enough to nudge the trial judge into saying, look, I'm not saying anything bad about you, Mr. Prosecutor, but those numbers are a little high. So tell me why you challenged these two people. I don't think so. It's not, especially when we're dealing with a relatively small sample size like we are here, it's not that great of a disparity, and I'm not aware of any other case that has found a step one Batson violation on such close numbers as that. Beyond that, I think that extrapolating, and I explain this in my brief, extrapolating from that kind of limited information is a little bit tricky, because, again, we're reducing the sample size, and really we don't know what the overall composition of the veneery was. And, in fact, the only evidence we have, the somewhat anecdotal evidence, is that at the time, I believe it was at that second Batson motion, the trial judge eyeballed, in his words, the jury pool and made the observation that there was no dearth of African-Americans. So to the extent we do have something in the record, I would submit it tends to cut against the step one Batson. What does no dearth mean? Excuse me? What does no dearth mean? I mean, how are we supposed to construe that? Well, it simply means that at least we know that there were at least one or two. Oh, I would think that no dearth means, I think what the court was suggesting was that there was more than some trivial amount left. I think what the court said was something like there are somewhat more Hispanics than I'm used to seeing in this courthouse, but there's certainly no dearth of African-Americans. So yes, it's ambiguous, it's somewhat vague, but I think what the court was suggesting was there was some appreciable amount of African-Americans. So that's why I say I think to the extent we do have some information, it at least can't be assumed that these were the only African-Americans we were dealing with, the ones that were identified during the two Batson hearings. Could you address the two that were the subject of these cases, the two jurors? Sure. Of course, I think Petitioner's claim is mostly focused on the statistics, and that's why I've emphasized the record is pretty thin on the statistics. The only other thing Petitioner points to is this notion that these two jurors were neutral. But I think as the court pointed out, and I think this is significant, there were apparently some characteristics of these jurors that I think would have cut the other way. So it may be more accurate to describe these jurors as mixed perhaps rather than neutral. The distinction in my mind being neutral would be a juror where there isn't really an indication one way or the other. I think these jurors had characteristics that could have cut either way. So were there strategic reasons why defense counsel might have said, Miles's counsel as opposed to co-defendant's counsel? If the prosecutor wants to knock out these jurors, that's fine with me. I'm not all that crazy about them myself. Absolutely, and I'm glad the court raised that because it was something that wasn't emphasized in my brief, or actually I don't think I mentioned that at all. But once it occurred to me when I was preparing for argument, it seemed obvious. And really the way I thought about this was more in terms of the procedural default argument and the ineffective assistance that's alleged to overcome that default. Counsel, of course, could have had legitimate strategic reasons for not joining the objection. One of them being petitioner's attorney may have wanted these jurors off the panel. In addition to he may just not have thought that the Batson claim was meritorious. It was rejected after all. He may have not wanted to participate in this sort of back and forth Batson battle that was going on in the trial court. So in terms of overcoming the procedural default through ineffective assistance, I don't think petitioner can show that because, again, I think it's important to recognize that claim when it was exhausted in the state court as it was required to be was raised only on direct appeal. And in the state court, and I believe there's a parallel federal rule, an ineffective assistance claim raised on direct appeal will only be sustained if the record affirmatively shows ineffective assistance, if there could have been no possible reason. It's hard to imagine a reason why you wouldn't join a motion. I just don't see the – I mean, I understand your argument, I guess, but I don't understand the downside of saying I join. I mean, I don't think that casts – I mean, the suspicion is it injects himself into an argument. But in the real trial world, I just find that hard to understand. Well, as I was saying, I think counsel could have concluded that he wanted these jurors off. He may not have wanted to keep these jurors on the jury. I think that would have been a very legitimate reason for not joining in the objection. But the fundamental problem in this case, really, assuming petitioner can get past procedural default, and actually I just want to make one more point. I cited the case last week to the Courting Council, the Carrera case, the recent decision, which I think vindicates the approach we took in the district court and the argument we made here, which is that there really was no call to independently examine the Batson claim in the first place to determine prejudice because both the state trial court – we have this sort of unusual situation here where the co-defendant actually did raise the claim and then petitioner also advanced the claim on appeal. Both of those state courts rejected it. I think that's as far as the district court needed to look to determine there was no prejudice here. In other words, I don't think prejudice for cause and prejudice extends so far as to say that he was perhaps deprived of an independent federal court examination of the Batson claim. Are you suggesting that we ought to look at the co-defendant's appeal to determine whether or not the claim was notorious? No, Your Honor. A petitioner himself raised – That's right, but as I read the court of appeal decision in his case, it said it's procedurally defaulted. You claim it was ineffective assistance of counsel not to raise it, and we don't find ineffective assistance of counsel. That's different than finding that the claim wasn't meritorious, isn't it? Well, in the course of finding no ineffective assistance of counsel, the state court said there was no prejudice because the Batson claim wasn't meritorious. So effectively, I think they did reject the merits of the Batson claim. So given that, should the habeas court be determining whether that was an unreasonable application of federal law as opposed to dismissing because of procedural default? No, because that question arises only in the context of overcoming the procedural default. So we're not talking about an adjudication on the merits of the IAC claim under 2254. I think we're just talking about procedural default. All I'm arguing is under the recent Carrera case, I think the prejudice analysis ends there by saying there was no prejudice because the claim was aired in the state courts and rejected. Any further questions? Thank you, counsel. Thank you both for your arguments. The case will be submitted for decision.
judges: Hawkins, Thomas, Hurwitz